UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU, #189355

      Plaintiff,                         Case No.:

v.                                     Hon.:

WILLIAM BORGERDING, M.D.
      in his Individual and Official Capacities,
CATHY LEWIS
      in her Individual and Official Capacities,
SABRINA AIKENS
      in her Individual and Official Capacities,
RUM BRIAN EVERS
      in his Individual and Official Capacities,
WARDEN PAUL KLEE
      in his Individual and Official Capacities,
ARUS ANNE DONAGHY
      in her Individual and Official Capacities,
RUM D. MARTIN
      in his Individual and Official Capacities,
ARUS D. NICHOLS
      in his Individual and Official Capacities,
DEPUTY LEE MCROBERTS
      in his Individual and Official Capacities,
DEPUTY SHERMAN CAMPBELL
      in his Individual and Official Capacities,
MELODY WALLACE
      in her Individual and Official Capacities,
RICHARD RUSSELL
      in his Individual and Official Capacities,
HEIDI E. WASHINGTON
      in her Individual and Official Capacities,
JOSHUA D. SCHAD
      in his Individual and Official Capacities,
RICHIE A. GALLATIN
      in his Individual and Official Capacities,

NORMA R. KILLOUGH
     in her Individual and Official Capacities,
DANIEL HEYNS
     in his Individual and Official Capacities,
PATRICIA CARUSO
     in her individual and Official Capacities,
RUSSELL A. VITTITOW
     in his Individual and Official Capacities,
JASON STOLTENBERG
     in his Individual and Official Capacities,
LLOYD RAPELJE
     In his individual and official capacities,
CORIZON, INC.
     A foreign corporation doing business in
     Michigan,
MINNIE MARTIN
     in her individual and Official Capacities,
ROBERT LACY,
     in his Individual and Official Capacities,

     Defendants.

_____/

## PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER FIRST AMENDMENT PROTECTIONS, VIOLATIONS OF CIVIL RIGHTS UNDER FOURTEENTH AMENDMENT PROTECTIONS, AND VIOLATIONS OF CIVIL RIGHTS UNDER EIGHTH AMENDMENT PROTECTIONS

NOW COMES Plaintiff, TEMUJIN KENSU, by and through his undersigned counsel, Solomon M. Radner and Excolo Law, PLLC, and for his Complaint, hereby states the following:

## JURISDICTIONAL ALLEGATIONS AND PARTIES

1.   This Court is conferred jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 *et. seq.*

2.   Venue is proper in the United States District Court for the Eastern District of Michigan because the events complained of occurred in this district.

3.   Plaintiff TEMUJIN KENSU (hereinafter "Plaintiff"), was at all times relevant a prisoner in the custody of the Michigan Department of Corrections.

4.   Plaintiff was confined at Saginaw Correctional Facility, 9625 Pierce Rd., Freeland, Michigan, 48623, at all times relevant, during the initial events giving rise to this action.

5.   Plaintiff has been confined at various facilities within the Michigan Department of Corrections for the entire duration of the events that give rise to this action.

6.   Plaintiff is currently confined at Macomb Correctional Facility, 34525 26 Mile Road, New Haven, MI, 48048.

7.   Upon information and belief, William Borgerding, M.D. (hereinafter "Defendant Borgerding") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections, and currently serves as CMO, Chief Medical officer, for the MDOC, and is being sued in his individual, official, and supervisory capacities.

8.   Upon information and belief, Cathy Lewis (hereinafter "Defendant Lewis"), is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections at Gus Harrison Correctional

Facility, ("ARF") in Adrian, MI, and is being sued in her individual, official, and supervisory capacities.

9.   Upon information and belief, Sabrina Aikens (hereinafter "Defendant Aikens"), is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as a nurse, and is being sued in her individual, official, and supervisory capacities.

10. Upon information and belief, Brian Evers (hereinafter "Defendant Evers"), is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as Resident Unit Manager ("RUM") at ARF, and is being sued in his individual, official, and supervisory capacities.

11.  Upon information and belief, Warden Paul Klee (hereinafter "Defendant Klee") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as the Warden of ARF, and is being sued in his individual, official, and supervisory capacities.

12.    Upon information and belief, Anne Donaghy (hereinafter "Defendant Donaghy") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as Assistant Resident Unit Supervisor ("ARUS") at ARF, and is being sued in her individual, official, and supervisory capacities.

13.     Upon information and belief, D. Martin (hereinafter "Defendant Martin") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as RUM at ARF, and is being sued in his or her individual, official, and supervisory capacities.

14.     Upon information and belief, D. Nichols (hereinafter "Defendant Nichols"), is a Michigan resident and at all times relevant to this complaint was employed by the Michigan Department of Corrections as ARUS at ARF, and is being sued in his or her individual, official, and supervisory capacities.

15.     Upon information and belief, Lee McRoberts (hereinafter "Defendant McRoberts") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as Deputy Warden at ARF, and is being sued in his individual, official, and supervisory capacities.

16.     Upon information and belief, Sherman Campbell (hereinafter "Defendant Campbell") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as Deputy Warden at ARF, and is being sued in his individual, official, and supervisory capacities.

17.     Upon information and belief, Melody Wallace (hereinafter "Defendant Wallace") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as MDOC

Litigation Coordinator, and is being sued in her individual, official, and supervisory capacities.

18.     Upon information and belief, Richard Russell (hereinafter "Defendant Russell") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as MDOC Director of the Office of Policy and Hearings, and is being sued in his individual, official, and supervisory capacities.

19.     Upon information and belief, Heidi Washington (hereinafter "Defendant Washington") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as Director of MDOC, and is being sued in her individual, official, and supervisory capacities.

20.     Upon information and belief, Joshua D. Schad (hereinafter "Defendant Schad") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as a nurse, and is being sued in his individual, official, and supervisory capacities.

21.     Upon information and belief, Richie A. Gallatin (hereinafter "Defendant Gallatin") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as a property officer at ARF, and is being sued in his individual, official, and supervisory capacities.

22.     Upon information and belief, Norma Killough (hereinafter "Defendant Killough") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as the MDOC Director of Prisoner Affairs, and is being sued in her individual, official, and supervisory capacities.

23.     Upon information and belief, Daniel Heyns (hereinafter "Defendant Heyns") is a Michigan resident, and at material times relevant to this complaint was employed by the Michigan Department of Corrections as Director of MDOC, and is being sued in his individual, official, and supervisory capacities.

24.     Upon information and belief, Patricia Caruso (hereinafter "Defendant Caruso") is a Michigan resident, and at material times relevant to this complaint was employed by the Michigan Department of Corrections as Director of MDOC, and is being sued in her individual, official, and supervisory capacities.

25.     Upon information and belief, Russell Vittitow (hereinafter "Defendant Vittitow") is a Michigan resident, and at material times relevant to this complaint was employed by the Michigan Department of Corrections, and is being sued in his individual, official, and supervisory capacities.

26.     Upon information and belief, Jason Stoltenberg (hereinafter "Defendant Stoltenberg") is a Michigan resident, and at material times relevant to this complaint was employed by the Michigan Department of Corrections, and is

being sued in his individual, official, and supervisory capacities.

27.     Upon information and belief, Lloyd Rapelje (hereinafter "Defendant Rapelje") is a Michigan resident, and at all times relevant to this complaint was employed by the Michigan Department of Corrections as a Reginal Director in the MDOC, and is being sued in his individual, official, and supervisory capacities.

28.     Upon information and belief, Defendant Corizon Health Services, Inc. (hereinafter "Corizon"), is a private, for-profit corporation located in St. Louis, Missouri, and is currently under contract with the MDOC to provide inmate health care services at the MDOC facilities involved in this action.

29.     Upon information and belief, the entity now known as Corizon was incorporated as the result of the merger of CMS and PHS, the MDOC's most recent private health care providers. Therefore, for the purposes of this complaint, PHS, CMS and Corizon are treated as the same entity, whose particular label merely depends on when the particular allegations took place and under which name this entity had elected to operate at that time.

30.     Defendant Corizon is not an arm of the state and is therefore not entitled to governmental immunity.

31.     Upon information and belief, Minnie Martin (hereinafter "Defendant Washington") is a Michigan resident, and at all times relevant to this complaint was employed by Defendant Corizon as a doctor, and is being sued in her individual,

official, and supervisory capacities.

32. Upon information and belief, Robert Lacy (hereinafter "Defendant Lacy") is a Michigan resident, and at all times relevant to this complaint was employed by Defendant Corizon as a doctor, and is being sued in his individual, official, and supervisory capacities.

33. When the events alleged in this complaint occurred, none of the above named individuals were acting in furtherance of a legitimate governmental function and thus are not entitled to governmental immunity.

## COMPLIANCE WITH PRE-EXHAUSTION REQUIREMENTS

34. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

35. Plaintiff has complied in all respects with the Pre-Exhaustion Requirements of the Prison Litigation Reform Act through the appropriate grievance processes of the MDOC.

36. Plaintiff has exhausted all administrative remedies.

## INTRODUCTION AND NATURE OF PLAINTIFF'S CLAIMS

37. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

38. Plaintiff is a 53-year-old male bringing suit over violations of protection under the First, Eighth, and Fourteenth Amendments.

39.     Violations of First Amendment consist of Defendants Adrian, Klee, Lewis, Gallatin, Martin, Donaghy, Evers, Nichols, McRoberts, Campbell, Wallace, Russell and Washington wrongfully taking property from Plaintiff in retaliation for Plaintiff's previously filed lawsuits.

40.     Plaintiff's personal property, including medical devices, was taken from him by the defendants listed herein without due process of law and for no legitimate reason at all. It was done to punish Plaintiff for his Constitutionally protected conduct including filing grievances and lawsuits, and obtaining a verdict against five MDOC employees. Verdict Form attached hereto as Exhibit 1.

41.     Plaintiff's medical devices and medical-related property, taken by the defendants in retaliation for Plaintiff's lawsuits, grievances, and verdict and in deliberate indifference to his serious medical needs, include the following non-exhaustive list of items:

      a. Inversion cuffs

      b. Back belt

      c. Hot water bottle

      d. Sun-protective hat

      e. Ankle brace

      f. Knee brace

      g. Elbow brace

h.  Supportive boots

i.  Gel insoles

42.    Plaintiff's property includes his guitar, amplifier, keyboard, foot pedal, other musical equipment, his wedding ring, art supplies, hobby craft supplies, a necklace, earrings, the contents of three legal lockers with his legal papers and books, his leather jacket, his 2400 DM typewriter, various medical devices including braces, religious items, radio, and other property, all of which was taken by the defendants without due process of law and without so much as a hearing, even a sham rubber-stamp hearing, in what has become extremely brazen violations of Plaintiff's Constitutional rights.

43.    After Plaintiff was deprived of some above property, the MDOC enacted new rules that do not permit inmates from purchasing property of quality similar to that which was stolen from Plaintiff including his typewriter, musical equipment, and radio. Such property could have been grand-fathered in, in which case Plaintiff would still have these items, but plaintiff is now not permitted to replace these items per the aforementioned MDOC new rules. Plaintiff is only being permitted to replace some of his property with property of significantly inferior quality that the aforementioned property which was taken from him as described herein.

44.    Plaintiff's stolen legal papers and stolen type-writer denied him access

to courts and to legal counsel, which is the specifically the reason such property was taken from him: To keep him from the Courts.

45.     Plaintiff was denied the Dog Program, though he was eligible, in direct retaliation for his aforementioned Constitutionally protected conduct.

46.     Plaintiff was written an "Insolence" ticket courtesy of Defendants Vittitow and Stoltenberg in direct, intentional, and purposeful retaliation for Plaintiff warning them he was going to sue them, which is Constitutionally protected speech.

47.     On or about June 16, 2014, Plaintiff was transferred from the Thumb Correctional Facility, or TCF, to the Gus Harrison Correctional Facility, or ARF, in retaliation for his lawsuit(s) and grievance(s).

48.     On or about February 19, 2015, Plaintiff was transferred from ARF to Oaks Correctional Facility, or ECF, again in retaliation for his lawsuit(s) and grievance(s). Plaintiff was also subject to an increase in baseless tickets and an increase in security level.

49.     These transfers were done as punishment for his grievance(s) and lawsuit(s) and were done with the intent to adversely affect Plaintiff.

50.     Plaintiff, presumably like most prisoners, preferred TCF over ARF, which is why such a transfer was punitive. ARF and ECF are the two most brutal facilities in the Michigan Department of Corrections.

51.     Violations of the First Amendment as they exist in this action, consist of lack of freedom to practice religion, and being retaliated against, as described herein, for his aforementioned Constitutionally protected conduct.

52.     Violations of the Eighth Amendment as they exist in this action, consist of prolonged deliberate indifference to his objectively serious medical needs of which the Defendants were and are subjectively aware, including refusing to treat him and taking away his aforementioned medical property.

53.     Violations of the Fourteenth Amendment as they exist in action, consist of Plaintiff being deprived of the aforementioned personal and medical property without procedural or substantive due process of law.

54.     Defendants refused to treat Plaintiff's serious medical needs despite a court verdict clearly and unambiguously finding that he suffers from serious medical conditions.

55.     Defendant Borgerding and four other non-party MDOC employees, were deliberately indifferent to Plaintiff's serious medical needs as of March 28, 2016.

56.     The Defendants are being sued in their official and individual capacities, as permitted by law.

57.     As a result of the defendants taking the aforementioned property from Plaintiff and exhibiting deliberate indifference to Plaintiff's serious medical

needs, Plaintiff has suffered:

      a.     Violations of his Constitutional rights under the First Amendment of the Constitution of the United States.

      b.     Violations of his Constitutional rights under the Eighth Amendment of the Constitution of the United States.

      c.     Violations of his Constitutional rights under the Fourteenth Amendment of the Constitution of the United States.

## **GENERAL ALLEGATIONS**

58.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

59.    Defendants continue to deny Plaintiff access to medical care in violation of the Eighth Amendment despite a March 28, 2016 verdict which unambiguously found that Plaintiff is suffering from serious medical conditions.

60.    Defendants wrongfully took Plaintiff's property in retaliation for Constitutionally protected conduct and without due process of law in violation of the First Amendment and Fourteenth Amendment.

61.    Defendants did not permit Plaintiff access to his medically-necessary specialized dietary needs in violation of the Eight Amendment.

62.    Defendants prevented Plaintiff from freely practicing his religion in violation of the First Amendment.

63.    Defendants denied Plaintiff access to the Courts and to legal counsel.

64.    Defendants Vittitow and Stoltenberg wrote Plaintiff a ticket in violation of the First Amendment.

## PLAINTIFF'S GRIEVANCES

65.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

66.    Plaintiff has previously exhausted all administrative remedies through the appropriate grievance process by filing numerous grievances, all of which were denied through Step 3 or simply ignored.

## INDIVIDUAL LIABILITY OF DEFENDANTS

67.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

68.    Plaintiff asserts that the named Defendants in this matter each have personal responsibility and liability for the claims made herein, to include each having intimate knowledge of the facts asserted, including Plaintiff's serious medical conditions and intense suffering, of which they were made fully aware via direct, face-to-face contact as well as all grievances, and are liable in their individual, official, and supervisory capacities.

## DEFENDANT LACY

69.    Plaintiff incorporates by reference all preceding paragraphs of this

Complaint as if fully stated herein.

70.     Defendant Lacy refused to acknowledge Plaintiff's serious medical needs or provide any relief to Plaintiff despite knowledge of his needs. Defendant Lacy was acting in concert with Defendants Borgerding in an attempt to protect Defendant Borgerding from the aforementioned verdict and in unconstitutional retaliation against Plaintiff for his Constitutionally protected conduct.

71.     As recently as September 26, 2016, Defendant Lacy in concert with Defendant Borgerding, wrote in a report that Plaintiff didn't need treatment for his knee, again in contradiction to the March 28, 2016 verdict.

## **DEFENDANT BORGERDING**

72.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

73.     Defendant Borgerding was found by a jury on March 28, 2016 to have been deliberately indifferent to Plaintiff's serious medical needs and went so far as to testify under oath during trial that he himself is a "prick." He was punished by the jury to the tune of $65,000.00 in punitive damages, per the jury instructions, to send a message to him and others. This message was clearly not received nor understood, since the MDOC rewarded his behavior by promoting him to Chief Medical Officer of the entire MDOC.

74.     Defendant Borgerding had the full responsibility for ensuring the

safety, health and well-being of the Plaintiff, and ensuring that he receive timely, prompt, and adequate medical care for Plaintiff's serious medical needs.

75.    Upon information and belief, Borgerding has continuously, over the course of years, withheld medical treatment from Plaintiff through deliberate indifference.

## DEFENDANT AIKENS

76.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

77.    Defendant Aikens denied Plaintiff's medical grievances with deliberate indifference to Plaintiff's serious medical needs.

## DEFENDANT KLEE

78.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

79.    Defendant Klee, as Warden, was personally involved in the denial of Plaintiff's medical grievances, acknowledged Plaintiff's concerns, needs and suffering by "parroting" his specific claims in his denial of Plaintiff's grievances.

80.    Defendant Klee did not provide any aid or to require staff under his control (administrative and medical), to provide Plaintiff with proper care, attention or relief.

## CLAIMS AS TO EACH DEFENDANT

81.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

82.    Defendants Borgerding, Lacy, Klee, Donaghy, D. Martin, Evers, Nichols, McRoberts, Campbell, Wallace, Russell, Washington, Schad, Killough, Heyns, Caruso, Rapelje, Corizon, and Minnie Martin each personally participated in the taking of Plaintiff's aforementioned medical property either through acting in concert with others, personal involvement, or supervisory involvement.

83.    Defendants Lewis, Klee, Donaghy, D. Martin, Evers, Nichols, McRoberts, Campbell, Wallace, Russell, Washington, Gallatin, Killough, Rapelje, Heyns, and Caruso each personally participated in the taking of Plaintiff's aforementioned personal property either through acting in concert with others, personal involvement, or supervisory involvement.

84.    Defendants Borgerding, Aikens, Lacy, Klee, Donaghy, D. Martin, Evers, Nichols, McRoberts, Campbell, Wallace, Russell, Washington, Schad, Martin, Killough, Heyns, Caruso, Rapelje, Corizon, and Minnie Martin each personally participated in the denial of medical car to Plaintiff for his serious medical needs, either through acting in concert with others, personal involvement, or supervisory involvement.

85.    Defendants Vittitow and Stoltenberg each participated either personally, by acting in concert with others, or through supervisory involvement,

in writing Plaintiff an "Insolence" ticker in unconstitutional retaliation for his warning to them that he'd file a lawsuit against them, which constitutes Constitutionally protected speech.

## COUNT I
## First Amendment Violations as to all Defendants

86.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

87.    Plaintiff engaged in Constitutionally protected conduct, including filing grievances, filing lawsuits, warning that he would file grievances and lawsuits, and obtaining a verdict against five MDOC officials.

88.    In retaliation and as punishment for this conduct, the above named defendants deprived Plaintiff of property, deprived Plaintiff of medical care, referred him in retaliation, and ticketed Plaintiff frivolously as described in detail herein.

89.    There was a causal connection between Plaintiff's Constitutionally protected conduct and the adverse retaliatory actions taken by the defendants against Plaintiff.

90.    As a direct and proximate result of these Defendants' actions, Plaintiff suffered damages.

## COUNT II

**Eighth Amendment Violations as to Defendants Borgerding, Aikens, Klee, Donaghy, D. Martin, Evers, Nichols, McRoberts, Campbell, Wallace, Russell, Washington, Schad, Killough, Rapelje, Corizon, Lacy, M. Martin, Heyns, and Caruso.**

91.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

92.     The Eighth Amendment of the U.S. Constitution provides, in pertinent part, that cruel and unusual punishments not be inflicted.

93.     The named Defendants' decision to withhold appropriate medical care and treatment from Plaintiff as described herein with deliberate indifference to Plaintiff's serious medical needs, while Plaintiff was in the MDOC's custody, violated his constitutionally protected rights.

94.     As a direct and proximate result of these Defendants' actions, Plaintiff suffered damages.

**COUNT III**
**Fourteenth Amendment Violations as to Defendants Borgerding, Klee, Donaghy, D. Martin, Evers, Nichols, McRoberts, Campbell, Wallace, Russell, Washington, Schad, Killough, Rapelje, Corizon, Lacy, M. Martin, Heyns, Caruso, Lewis, and Gallatin.**

95.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully stated herein.

96.     Plaintiff was denied access to courts by having his legal papers, legal books, and typewriter taken by these defendants without procedural or substantive

due process of law in violation of the 14th Amendment.

97.     Plaintiff was deprived of his property identified herein without procedural or substantive due process of law in violation of the Fourteenth Amendment.

98.     As a direct and proximate result of these Defendants' actions, Plaintiff suffered damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

A.   Compensatory damages in an amount which is fair, just, and reasonable;

B.   Punitive and/or exemplary damages in an amount which is fair, just, and reasonable;

C.   Injunctive relief to secure access to care necessary to address Plaintiff's medical needs;

D.   Injunctive relief to ensure Plaintiff's rights under the First, Eighth, and Fourteenth Amendments are not being violated by these defendants;

E.   Entry of a declaratory judgment stating that Defendants' practices, acts and omissions violated Plaintiff's rights guaranteed to him by the First, Eighth, and Fourteenth Amendments to the Constitution of the United States

of America;

F.    The immediate return to Plaintiff of his wedding band, leather coat, hobbycraft, books, legal supplies, and other property taken while at ARF in violation of Plaintiff's constitutional rights;

G.    Grant all pending DTMB-1104's for property taken from Plaintiff during the transfers involving TRF, ARF, ECF, and MRF;

H.    Immediate entry into the Dog Program;

I.    Permission to receive safe, non-drug, natural health items from legitimate businesses in accordance with Special Accommodations Policy;

J.    Replacement of the two Cortech Boxes unconstitutionally taken from Plaintiff's cell;

K.    The immediate cessation of retaliatory transfers and Court oversight over any future facility transfers;

L.    The securing of Plaintiff's door upon request;

M.    Plaintiff's Gluten-free, Dairy-free, Artificial sweetener-free diet and "6 small feedings/snack bag" will be immediately restored;

N.    Restoration of Plaintiff's deceased spouse's pension to Plaintiff's account;

O.    The immediate return of Plaintiff's religious property including altar items, robes, headscarves, and others;

P.   The immediate change of the name used by Defendants to Plaintiff's legal and religious name: Temujin Kensu;

Q.   The immediate replacement or return of all unconstitutionally taken foot lockers while housed at ARF;

R.   The immediate return of Plaintiff's medical property including support devices, inversion cuffs, back belt, water bottle, sun-protective hat, ankle/elbow/knee braces, supportive boots, Gel Insoles, and other property;

S.   The immediate reinstatement of Retin-A, Panoxyl, Multivite/Mineral Formula, Vitamin D, Magnesium/Calcium, and Probiotics at the same dosages as before they were terminated by Defendants;

T.   Immediate access to an orthopedist of Plaintiff's reasonable choosing for treatment of Plaintiff's knees and shoulders, with an order that Defendants must abide by and pay for all treatment prescribed by such orthopedist, including the referral of such orthopedist to other doctors including specialists whose prescribed treatments must also be followed;

U.   Immediate access to a primary care doctor or internist for the purpose of thoroughly examining Plaintiff to determine what other treatment Plaintiff requires and what other specialists, if any, Plaintiff needs to see, and an order that Defendants must abide by and pay for all such treatment plans;

V.   Such other and further relief as this Court may deem appropriate,

including costs, interest, and reasonable attorney fees pursuant to 42 U.S.C.

§1983.

Respectfully submitted,

EXCOLO LAW, PLLC

By: */s/Solomon M. Radner*
Solomon M. Radner (P73653)
Attorney for Plaintiff
26700 Lahser Road, Suite 401
Southfield, MI 48033
(248) 291-9719

Dated: September 28, 2016

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all matters before the Court

to the extent allowed by law.

Respectfully submitted,

EXCOLO LAW, PLLC

By: */s/Solomon M. Radner*
Solomon M. Radner (P73653)
Attorney for Plaintiff
26700 Lahser Road, Suite 401
Southfield, MI 48033
(248) 291-9719

Dated: September 28, 2016