UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TEMUJIN KENSU,<br>    Plaintiff,<br>v.<br><br>WILLIAM BORGERDING, M.D.,<br>*et al*,<br>    Defendant.<br>_____/ | Case No.: 16-13505<br><br>Linda V. Parker<br>United States District Judge<br><br>Stephanie Dawkins Davis<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
EMERGENCY MOTION FOR TEMPORARY RESTRAINING
<u>ORDER AND PRELIMINARY INJUNCTION (Dkt. 112)</u>**

**I.   PROCEDURAL HISTORY**

Plaintiff brought this action under 42 U.S.C. § 1983. (Dkt. 1). District Judge Linda V. Parker referred pretrial matters in this case to the undersigned on May 10, 2016. (Dkt. 30). On June 29, 2018, plaintiff filed the instant emergency motion for temporary restraining order and preliminary injunction to prevent plaintiff's transfer to another prison. (Dkt. 112). On July 2, 2018, the undersigned held a telephone conference with the parties' attorneys, followed by a hearing on the merits of plaintiff's motion.

## II.   FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

Plaintiff's evidence consisted of information proffered by plaintiff's counsel. According to counsel, the Michigan Department of Corrections (MDOC) is planning to transfer plaintiff to another prison in retaliation for his litigation against the MDOC. Plaintiff learned of his impending transfer when he received a letter from the warden that contained a statement wishing him well at his new facility. Plaintiff's counsel stated that there is an allegation that Health Unit Manager Cooper has sexually harassed or abused plaintiff, and plaintiff will be transferred to keep him out of harm's way, according to the MDOC. However, plaintiff asserts that the real reason for the transfer is to retaliate against plaintiff for sending kites and for his litigation. Plaintiff notes that neither he nor Cooper filed a complaint of sexual abuse or harassment, and plaintiff asserts that there was no abuse or harassment. Plaintiff's counsel also notes that Cooper testified at a hearing on another of plaintiff's motions for temporary restraining order, and her testimony supported plaintiff's allegations of retaliation from certain medical personnel. Cooper also had been attempting to assist plaintiff in obtaining a special diet for his medical needs. As such, plaintiff believes the transfer is also in retaliation against Cooper. According to plaintiff, MDOC's goal is to move plaintiff far enough away to make it harder for him to meet with his counsel.

MDOC's counsel, Mr. Dean, proffered information concerning the reason for plaintiff's scheduled transfer, indicating that the impending transfer is being conducted in accordance with MDOC policy based on allegations that plaintiff was subjected to sexual abuse by a corrections employee. According to Mr. Dean, at least one third party overheard an interaction between plaintiff and Cooper which lead the third party to believe that plaintiff had been, or would be, subjected to sexual abuse or harassment. The third party reported his/her observations to prison officials. The third-party allegations triggered an investigation by the MDOC under the Prison Rape Elimination Act ("PREA") and MDOC policy directive 03.03.140. According to MDOC, PREA and the policy directive provide for the transfer or removal of either the prisoner-victim or the prison employee-abuser during the investigation. In this instance, according to Mr. Dean, MDOC decided to transfer plaintiff instead of Cooper because even if Cooper were removed from the facility or from plaintiff's care, as Health Unit Manager, the personnel who would be left to look after plaintiff's health care work under Cooper. Thus, MDOC is concerned that Cooper's subordinates might take actions to undermine the investigation or retaliate against plaintiff.

### III. ANALYSIS AND RECOMMENDATIONS

    A. <u>Legal Standards for Temporary Restraining Order</u>

Fed. R. Civ. P. 65 provides that the Court May issue an order for injunctive relief "only on notice to the adverse party." Defendants received notice of the instant matter upon plaintiff's electronic filing of the instant motion. In determining whether injunctive relief is proper, the court considers four factors: (1) whether plaintiff has a strong likelihood of success on the merits; (2) whether plaintiff has shown irreparable injury; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). The same standard applies to a motion for temporary restraining order as to a motion for preliminary injunction. *W. Michigan Family Homes LLC v. United States Dep't of Agric.*, 2013 WL 12109437, at *1 (W.D. Mich. Nov. 26, 2013), citing *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). Although no single factor is controlling, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal.").

Plaintiff bears the burden of demonstrating entitlement to an injunction, and the burden is a heavy one because injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Indeed, the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000); *see also McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy."). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 230 (6th Cir. 2003) (quoting *Michigan Bell Telephone Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001)). A plaintiff must always, however, show irreparable harm before a preliminary injunction may issue. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

B. <u>Analysis</u>

In this instance, the undersigned concludes that plaintiff has not met his burden to warrant a temporary restraining order.

1. Likelihood of Success on the Merits

In order to establish likelihood of success on the merits of a claim for First Amendment retaliatory transfer claim, plaintiff must prove that: (1) he engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that this adverse action was taken at least in part because of the exercise of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff has come forward with very little evidence to establish likelihood of success on the merits of his claims. Plaintiff asserts that his upcoming transfer is in retaliation for his (1) sending kites to health care personnel, (2) sending letters to the Warden regarding his unanswered kites, and (3) participating in litigation, including 3 class actions against the MDOC. Notably, plaintiff did not provide copies of any kites, letters or pleadings from other litigation. Nevertheless, the undersigned will assume for purposes of this motion that some or all of plaintiff's stated activities are protected activities. *Eckerman v. Tennessee Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010) ("The filing of a lawsuit to redress grievances is clearly protected activity under the First Amendment.") (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 396 (6th Cir.1999) (en banc)).

As to the second element, plaintiff provided no evidence or even argument that the transfer would deter a person of ordinary firmness from continuing to engage in the alleged protected activity(ies).  At best, plaintiff established that a transfer to a facility in the upper peninsula would make it inconvenient for counsel to confer with him.  However, even assuming that plaintiff had established the first two elements of a retaliation claim, plaintiff has not satisfied the third element – i.e. that the impending transfer was scheduled at least in part because of his exercise of protected conduct.

Plaintiff asserts that MDOC's reasons for scheduling his transfer are his actions in sending kites and engaging in litigation activities against MDOC.  He also suggests that Cooper's testimony at an earlier hearing relating to a separate motion for temporary restraining order in which she made statements in plaintiff's favor may have triggered a retaliatory response.  Additionally, plaintiff's counsel alluded to a conflict between Cooper and another prison official over plaintiff's menu, implying that the prison is retaliating against both Cooper and plaintiff for his diet requests.  Notwithstanding these theories for causation, plaintiff provides no evidence, either by way of declaration, affidavit, testimony, documents or otherwise, to tie together his kites and litigation with the pending transfer.[1]  *See*

---

[1] When questioned by the court as to the existence of any such evidence, plaintiff's counsel mentioned the prospect of presenting testimony.  However, plaintiff ultimately did not provide any such evidence, and the court did not order additional evidence, as the hearing was

*Harbin–Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir.2005) ("[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"); *Sizemore v. Soc. Sec. Admin.*, 2005 WL 3789966, at *1 (S.D. Ohio May 2, 2005), *report and recommendation adopted*, WL 406612 (S.D. Ohio Feb. 16, 2006) ("[C]onclusory statements presented in the motion are insufficient to show a likelihood of success on the merits or that, in the absence of injunctive relief, he would suffer irreparable harm.") (citing *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.,* 134 F.3d 749, 753 (6th Cir.1998)); *Oliver v. Palus*, 2009 WL 2170270, at *2 (E.D. Mich. July 16, 2009) ("The Plaintiff has not alleged any facts, beyond the conclusory statement that acts of retaliation "are common place within the MDOC," showing that he has been retaliated against, or will be retaliated against because he filed this lawsuit."). Again, it is plaintiff's burden to show entitlement to injunctive relief.

Plaintiff's case is further diminished by the principle, discussed more fully below, that "prisoners generally have no inherent constitutional right to be confined in a particular institution or to enjoy a certain classification." *Ledger v. Walters*, 230 F.3d 1358 (6th Cir. 2000) (citing *Olim v. Wakinekona,* 461 U.S. 238, 245-46 (1983); *Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Beard v.*

---

conducted only after plaintiff's counsel confirmed that he was prepared to proceed, and time is of the essence in view of the scheduled July 5, 2018 transfer and the intervening holiday.

*Livesay,* 798 F.2d 874, 876 (6th Cir.1986)). The Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management. *Meachum v. Fano,* 427 U.S. 215 (1976). "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Given the deference given to prison authorities, it is unlikely that plaintiff will succeed on his retaliation claim.

> 2. Irreparable Harm

Plaintiff argues two instances of irreparable harm that will occur if he is transferred. First, his medical care will be delayed at the new facility. This is so because Cooper, in comparison with other health officials, has the most knowledge of plaintiff's health care, and the medical personnel at the new facility will need to take time to go through plaintiff's records to understand his complex medical history. Second, plaintiff's counsel's ability to meet with plaintiff will be limited because of the distance between them, thereby hindering counsel's ability to advocate for plaintiff's rights.

The moving party must show that irreparable harm is "both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir.1991). *See also Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22, 129 S.Ct. 365, 172

L.Ed.2d 249 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). "[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins.,* 934 F.2d 30, 34 (2d Cir.1991). To constitute irreparable harm, an injury must be certain, great, and actual. *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985). Irreparable harm cannot be speculative; "the injury complained of [must be] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.;* see also *Regan v. Vinick & Young,* 862 F.2d 896, 902 (1st Cir.1988) ("[s]peculation or unsubstantiated fears about what may happen in the future cannot provide the basis for a preliminary injunction").

As to plaintiff's first contention, while having Cooper involved in plaintiff's care with the level of knowledge she has regarding plaintiff's medical history may be an advantage for plaintiff, not having Cooper available to him does not demonstrate irreparable harm. Plaintiff has made no showing that the receiving prison will be unable to care for plaintiff's medical needs. At the hearing, MDOC

counsel Mr. Dean[2] explained that the medical capabilities of the receiving prison are vetted before a new facility is chosen for the prisoner. Specifically, Mr. Dean explained that MDOC has a Health Care Grid that prison officials use to compare the medical capabilities of the prisons. A prisoner will not be sent to a facility which does not have the capability to care for the prisoner. Mr. Dean indicated that the receiving prison, has the capability to care for plaintiff. Plaintiff has provided no evidence demonstrating that MDOC did not use the Health Care Grid or that another facility in fact could not handle plaintiff's needs. Indeed, plaintiff's counsel acknowledged during oral argument that his argument is not that no other facility can provide appropriate care for plaintiff, but rather that the new facility would be "starting from scratch." Plaintiff's claim that there will be a delay in his medical care while the new medical personnel acclimate themselves to his medical history is merely speculative, not "certain" or "actual." *See Wisconsin Gas Co.,*

---

[2] Mr. Dean indicated that after plaintiff filed the instant motion he had a telephone conference with both the Warden of the Macomb Correctional Facility where plaintiff is housed, as well as the Facility Inspector/PREA Coordinator Christopher Steece to gather this information. Mr. Dean cited and read into the record § 115.67(b) Agency Protection Against Retaliation, which states,
> The agency shall employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.

This language can be found at the National PREA Resource Center, Prisons and Jail Standards, available at https://www.prearesourcecenter.org/training-technical-assistance/prea-101/prisons-and-jail-standards.

11

758 F.2d at 674. Furthermore, plaintiff proffered no evidence that if any such delay occurs it will result in irreparable harm to him.

As to plaintiff's second claim of irreparable harm, while the court will allow for the possibility that limited ability to meet in person with counsel due to the distance between them could, in some instances, result in irreparable harm, plaintiff has not made such a showing here. Indeed, by analogy, in the First Amendment retaliation context, a transfer can be retaliatory if accompanied by aggravating factors, such as losing a job needed to pay for an attorney along with a transfer that inhibits a prisoner's ability to access the courts. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005). A limited exception applies "where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts." *Hix v. Tenn. Dept. of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (citing *Siggers-El*, 412 F.3d at 704). The only adverse consequences noted in *Siggers–El* were those that were directly related to the inmate's ability to retain and have access to an attorney for a legal challenge to his criminal conviction. These consequences were so directly related to the inmate's access to the courts that they constituted actions that "would deter a

person of ordinary firmness from engaging in protected conduct." 412 F.3d 693, 701–02 (2005). *Siggers-El* is helpful here because the court addressed the issue of an attorney's distance from the prisoner-client. However, in *Siggers-El*, the issue involved more than the attorney's distance; the issue in that case was also that the prisoner lost his high-paying job needed to pay for the attorney in his appeal from his criminal conviction. 412 F.3d 693, 701–02 (2005). The court held that a reasonable trier of fact could conclude that the defendant's retaliatory transfer could deter a person of ordinary firmness from continuing to engage in protected conduct because of the loss of the ability to pay his attorney and the attorney's distance from the prison. *Id.* Court did not conclude that distance alone is enough to deter person of ordinary firmness from engaging in a protected activity.

Here however, plaintiff does not have an issue paying for counsel; plaintiff merely has the issue of distance.[3] Plaintiff's access to the courts or his attorney is not going to be cut-off completely or even severely limited as in *Siggers-El*, but rather may be less convenient. As previously noted by courts in this district, "[t]he

---

[3] At the hearing, plaintiff's counsel acknowledged that neither he nor plaintiff knew where plaintiff would be transferred. MDOC's counsel was not prepared to share that information for security reasons, as the transfer was still some days out. Even assuming the substantial distance that plaintiff has presumed, i.e. the upper peninsula, the Court acknowledges the attendant inconvenience, but cannot conclude, in view of the many options of modern travel, that a transfer to such a facility will result in irreparable harm to plaintiff. Notably, counsel did not point to any specific impediment to such travel other than the distance.

mere fact that plaintiff's transfer may make it harder for him to prosecute this litigation is not the type of irreparable harm justifying the issuance of a preliminary injunction." *Henry v. City of Eastpointe Police Dep't*, 2012 WL 3151566, at *2 (E.D. Mich. July 13, 2012), *report and recommendation adopted sub nom.* 2012 WL 3149103 (E.D. Mich. Aug. 2, 2012); *Rouse v. Caruso*, 2007 WL 909583, at *5 (E.D. Mich. Mar. 23, 2007).

Further, "The First Amendment protects an inmate's right to access to the courts, but not necessarily his access to all the legal assistance or materials he may desire." *Tinch v. Huggins,* No. 99–3436, 2000 WL 178418, at *1 (6th Cir. Feb.8, 2000) (citing *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985)). Recognizing that the above discussion relates to the circumstances necessary to successfully claim a violation of constitutional rights, the cases are nevertheless useful in weighing the nature of the harm that plaintiff has alleged. Plaintiff's claim that it will be more difficult to meet in person with counsel, absent evidence supporting the severity of the limitation, is insufficient to demonstrate irreparable harm. Notably, plaintiff has not provided evidence that he will be kept from all access to counsel, including by phone or by mail. *See e.g., Rivers v. Woosley,* 2012 WL 4343752, at *3 (W.D.Ky. Sept. 21, 2012) (citing *Aswegan v. Henry,* 981 F.2d 313, 314 (8th Cir. 1992) ("Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular

14

means of access, including unlimited telephone use."); *Ingalls v. Florio,* 968 F. Supp. 193, 204 (D.N.J.1997) ("[L]imited access to telephone calls, however, is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits.")). Although plaintiff's counsel argues that he would not be able to review documents with plaintiff unless they meet in person, counsel did not argue that he in fact could not meet in person with plaintiff, or that he could not mail documents to plaintiff in advance of a phone call. Therefore, plaintiff has not demonstrated irreparable harm.

        3.      Harm to Others/Public Interest

The undersigned will address the last two elements together. Plaintiff provided no argument on these elements. MDOC, however, provided the prison's penological interests in transferring plaintiff, namely separating potential victims of sexual abuse from the accused abuser(s). In considering harm to others and the public interest in issuing an injunction, the undersigned is guided by the following principles. First, as stated above, convicted prisoners have no reasonable expectation that they will remain in any particular facility, and, second, prison officials have broad authority to transfer prisoners from one facility to another. *Meachum v. Fano*, 427 U.S. 215, 225, 228 (1976); *Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995) ("Ward has no constitutional right to remain at a specific facility or to prevent a transfer to another level II facility for a permissible

reason."). As to the second principle, the undersigned acknowledges that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Further, "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547. As such, "courts, especially federal courts, should be reluctant to become involved in the internal administration of state prisons." *Hanna v. Toner,* 630 F.2d 442, 444 (6th Cir. 1980).

MDOC has explained that plaintiff's pending transfer is for his safety. MDOC stated that PREA and the policy directive call for the transfer of either the prisoner-victim or the official-abuser during the investigation of sexual abuse or harassment for the safety of the victim. The allegation is that Cooper has engaged or will engage in sexual assault or harassment against plaintiff. The prison determined that transferring plaintiff was best, as transferring Cooper would leave her subordinates to care for plaintiff, which could lead to retaliation or interference in the investigation. Plaintiff did not come forward with evidence to counter the prison's penological interests in transferring plaintiff. Given the deference accorded to prison administrators in decision on prisoner safety, and MDOC's

valid explanation of the transfer, this Court should refrain from entangling itself in the MDOC's decisions as to prison administration, including the transfer of prisoners. *See Williams v. Ries*, 2008 WL 125923, at *2 (E.D. Mich. Jan. 11, 2008). As such, the undersigned suggests that plaintiff is not entitled to a restraining order or injunctive relief.

## IV.     RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's emergency motion for temporary restraining order and preliminary injunction (Dkt. 112) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 3, 2018

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on July 3, 2018, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov