UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEMUJIN KENSU,

       Plaintiff,

                                   Civil Case No. 16-13505
v.                                 Honorable Linda V. Parker

WILLIAM BORGERDING, M.D., et al.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS ROBERT LACY, D.O. AND JEFFREY BOMBER, D.O.'S SECOND MOTION FOR SUMMARY JUDGMENT (ECF NO. 238)

On September 28, 2016, Plaintiff Temujin Kensu, a Michigan Department of Corrections ("MDOC") prisoner, filed this civil rights action under 42 U.S.C. § 1983 against 18 MDOC employees and two employees of Corizon, Inc. As to the Corizon defendants, Robert Lacy, D.O. and Jeffrey Bomber, D.O., the Court has granted summary judgment in their favor as to all but one of Mr. Kensu's claims: that they were deliberately indifferent to his shoulder condition in violation of the Eighth Amendment.[1] (*See* ECF Nos. 187, 232.)

---

[1] The MDOC defendants have successfully moved for summary judgment as to all of Mr. Kensu's claims, except Counts VI, VII, VIII, and XII against Defendants Brian Evers, Anne Donaghy, Dave Martin, and Richie Gallatin. (*See* ECF Nos. 138, 187, 221, 232.) The MDOC defendants concede that Mr. Kensu "adequately pled" the remaining counts against the remaining defendants. (*See* ECF No. 221 at Pg ID 8653.)

On May 19, 2022, Drs. Bomber and Lacy moved for leave to file a second summary judgment motion pursuant to Federal Rule of Civil Procedure 56 to address the Sixth Circuit Court of Appeals' decision in *Phillips v. Tangilag*, 14 F.4th 524 (2021).  (ECF No. 235.)  This Court granted their request.  (ECF No. 236.)  The matter is now before the Court on Drs. Bomber and Lacy's motion (ECF No. 238), which has been fully briefed (ECF Nos. 241, 242).

## I.     Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a

2

genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence

upon which a jury could reasonably find for that party; a "scintilla of evidence" is

insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the

non-movant's evidence and draw "all justifiable inferences" in the non-movant's

favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed" must

designate specifically the materials in the record supporting the assertion,

"including depositions, documents, electronically stored information, affidavits or

declarations, stipulations, admissions, interrogatory answers, or other materials."

Fed. R. Civ. P. 56(c)(1).  Notably, the trial court is not required to construct a

party's argument from the record or search out facts from the record supporting

those arguments.  *See, e.g., Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80

(6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.

Cir. 1988)) ("the trial court no longer has a duty to search the entire record to

establish that it is bereft of a genuine issue of material fact"); *see also InterRoyal*

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied* 494 U.S. 1091

(1990) ("A district court is not required to speculate on which portion of the record

the nonmoving party relies, nor is it obligated to wade through and search the

3

entire record for some specific facts that might support the nonmoving party's

claim.").  The parties are required to designate with specificity the portions of the

record such that the court can "readily identify the facts upon which the . . . party

relies[.]"  *InterRoyal Corp.*, 889 F.2d at 111.

## II.    Relevant Procedural and Factual Background

In a previous lawsuit, *Kensu v. Stieve*, No. 13-10279 (E.D. Mich. Filed Jan.

22, 2013) ("*Kensu I*"), Mr. Kensu sued various Michigan Department of

Corrections ("MDOC") officials and Corizon health care professionals for

deliberate indifference to a number of maladies, including shoulder problems and

"a host of spinal and joint injuries, disease, and degeneration."  Compl., *id.*, ECF

No. 1.  As to his spinal and joint injuries, Mr. Kensu listed: "serious and advancing

spinal disease, including spondylitis, spondylosis, spondylosthesis, Schmorl nodes,

disk degeneration, compression and joint space narrowing, past fractures, bulging

disks, spinal stenosis and straightening of the lumbar lordis—so much so that it

even affects Plaintiff's urination."  *Id.* ¶ 42.

In *Kensu I*, the Honorable Victoria A. Roberts granted summary judgment to

the Corizon defendants, which included Dr. Bomber but not Dr. Lacy, finding that

a reasonable jury could not conclude that they "disregarded an excessive risk to

[Mr. Kensu's] health or safety."  Order at 10, *id.* (filed Sept. 2, 2015), ECF No.

114 at Pg ID 1419.  Judge Roberts concluded that "[Mr. Kensu] was seen regularly

4

by medical staff[,]" that the health care professionals "prescribed what they felt were appropriate medications[,]" and that Mr. Kensu failed to show that the health care defendants "disregarded an excessive risk to his health or safety." *Id*. Specifically addressing Mr. Kensu's shoulder problems, Judge Roberts wrote:

> Based on the record before the Court, a juror could not reasonably find that Buskirk knew of and disregarded an excessive risk to Kensu's health or safety. Buskirk saw Kensu regularly and determined that there was no new symptoms. He concurred with previous doctors. Similarly, Bomber had very limited contact with Kensu; he discussed Kensu's back and shoulder pain with Buskirk and prescribed what they felt were appropriate medications.

*Id.* The case proceeded to trial against the MDOC defendants.

On March 28, 2016, after a five-day trial, a jury concluded that all but three MDOC defendants were deliberately indifferent to Mr. Kensu's serious medical needs. Jury Verdict Form, *id*. (filed Mar. 29, 2016), ECF No. 139. The jury was charged with evaluating all of the elements of Mr. Kensu's deliberate indifference claim. *See* Mar. 28, 2016 Tr. at 38-39, *id*. (filed May 25, 2016), ECF No. 158 at Pg ID 2403-04. However, the verdict form did not require the jury to identify which of Mr. Kensu's medical needs they found to be "serious" or to which of his medical needs the defendants were deliberately indifferent. *Id*.

The present litigation addresses conduct following the verdict in *Kensu I* up to the filing of the Second Amended Complaint on October 9, 2017. Although recognizing this (*see* ECF No. 184 at Pg ID 8355), Mr. Kensu focuses on evidence

outside this period when detailing his medical history (*see, e.g.*, *id.* at Pg ID 8359;

ECF No. 152 at Pg ID 6371, 6377-78), including a June 26, 2009 note in his

medical records stating that he "would benefit from referral to orthopedic surgeon

for surgical consultation (*see, e.g.* ECF No. 184 at Pg ID 8359 (citing ECF No.

184-1 at Pg ID 8368)).[2]  Within the relevant period, Mr. Kensu identifies only two

documents from his medical records: (i) a September 23, 2016 Kite Response

addressing Mr. Kensu's inquiry about when he would see an orthopedic surgeon

for his knee and shoulders, indicating that the request for an orthopedic consult had

been deferred and an appointment scheduled to discuss the alternative treatment

plan received from Corizon (ECF No. 152-33 at Pg ID 6399); and (ii) notes from a

January 13, 2017 provider visit with HUM Cooper and RN-13 Parr-Mirza during

which Mr. Kensu "complain[ed] of bilateral shoulder pain and crepitus" (*id.* at Pg

ID 5151-55).

     Drs. Lacy and Bomber provide greater detail regarding Mr. Kensu's

shoulder complaints in their initial summary judgment motion.  (*See* ECF No. 140

at Pg ID 3347.)  According to their synopsis, on August 12, 2016, Mr. Kensu

presented to healthcare complaining of heat sickness at which time the doctor

---

[2] Contrary to Mr. Kensu's representation, this document does not show that surgery
was recommended for his shoulder.  (ECF No. 184-1 at Pg ID 8368.)  Instead, it
reflects that the writer, Joseph Burtch, M.D., felt only that Mr. Kensu would
"benefit from" a "referral" for a consultation with an orthopedic surgeon.  (ECF
No. 184-1 at Pg ID 8368.)

noted additional complaints of shoulder pain and general musculoskeletal pain with no new symptoms.  (ECF No. 141 at Pg ID 3532.)  On January 13, 2017, Mr. Kensu presented to health care with osteoarthritis affecting his ankles and shoulders, as well as neuropathy and chronic sinusitis.  (*Id.* at Pg ID 3533.)  As indicated above, with respect to his shoulder, Mr. Kensu "complain[ed] of bilateral shoulder pain and crepitus" and "state[d] he is able to 'pop' his shoulders out of place."  (*Id.*)  The notes reflect that Mr. Kensu "has pain with active range of motion abduction, adduction, external and internal rotation."  (*Id.*)  They further reflect that Mr. Kensu "continue[d] to lift weights on a regular basis."  (*Id.*)  The "assessment/plan" was to continue Naprosyn and to apply a hot water bottle to the affected areas.  (*Id*. at Pg ID 3536.)  A special accommodation for a hot water bottle was generated.  (*Id*.)

As of July 27, 2017, Mr. Kensu was prescribed Naprosyn and Excedrin, along with a host of other medications.  (*See* ECF No. 238-1 at Pg ID 8928).  On that date, as reflected in a note generated by PA Marianne McKissick, the Excedrin was discontinued because there was a "high risk for GI bleed" because Mr. Kensu also was taking Naprosyn, another non-steroidal anti-inflammatory drug.  (*Id.* at Pg ID 8930.)  The following day, however, in another note generated by PA McKissick, Excedrin was prescribed to address Mr. Kensu's complaints and thus the Naprosyn was discontinued.  (*Id.* at Pg ID 8931-35.)  At a health care visit on

September 25, 2017, PA McKissick noted that Mr. Kensu has a medical detail for a hot water bottle but wrote that "[t]here is no medical evidence to support the continued need of a hot water bottle[]" and so the "detail will be revoked." (*Id.* at Pg ID 8940.)

## III.   Applicable Law and Analysis

The Eighth Amendment proscribes "cruel and unusual punishments[.]"  U.S. Const. amend. VIII.  States and state actors can violate this prohibition by failing to provide prisoners the health care needed to prevent "pain and suffering" from their health conditions.  *Phillips*, 14 F.4th at 532 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  However, because the Eighth Amendment proscribes only "cruel and unusual punishment," the "mere failure to provide adequate medical care to a prisoner" does not constitute a violation of this provision.  *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018); *see also id.* at 736 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (cleaned up) (explaining that "allegations of inadvertent failure to provide adequate medical care, or a negligent diagnosis, simply fail to establish the requisite culpable state of mind").  "[A] constitutional violation arises only when the [medical provider] exhibits 'deliberate indifference to a prisoner's serious illness or injury,'" *id.* at 737 (quoting *Estelle*, 429 U.S. at 105), "that can be characterized as 'obduracy and wantonness' rather than 'inadvertence or error in good faith,'" *id.* (quoting *Wilson*, 501 U.S. at 299 (1991)).

Deliberate indifference requires proof of two components: one objective and the second subjective. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Id.* (citing *Farmer*, 511 U.S. at 834-35). "Only if a prisoner proves th[e] objective element must courts consider the second (subjective) part of the deliberate-indifference test." *Phillips*, 14 F.4th at 535.

To satisfy the objective component, the plaintiff must first demonstrate a "*serious* medical need[,]" *Phillips*, 14 F.4th at 534 (quoting *Estelle*, 429 U.S. at 106) (emphasis added), which is one "that a doctor has diagnosed . . . as requiring treatment" or is "an obvious problem that any layperson would agree necessitates care[,]" *id.* (citing *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013)). "As the Supreme Court explained in *Farmer*, 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Brown v. Bargery*, 207 F.3d 863, 867 (quoting *Farmer*, 511 U.S. at 834). "If the plaintiff's claim . . . is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious, the plaintiff must place verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)

(internal quotation marks and citations omitted).[3]

Mr. Kensu offers no "expert medical evidence describing what a competent

doctor would have done [with respect to his shoulder condition] and why the

chosen course was not just incompetent but grossly so." *Phillips*, 14 F.4th at 536

(citing *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017); *Rhinehart*, 894

F.3d at 737-38). For most of this litigation, Mr. Kensu relied heavily on his

assertion that the jury in *Kensu I* found deliberate indifference with respect to his

shoulder condition. (*See, e.g.*, ECF No. 152 at Pg ID 6371-72; ECF No. 184 at Pg

ID 8359, 8362.) As discussed earlier, however, that is a clear misrepresentation of

the record in *Kensu I*, where Judge Roberts in fact granted summary judgment to

the medical providers because no reasonable juror could find deliberate

indifference with respect to Mr. Kensu's shoulder problems. Further, the jury

---

[3] Drs. Lacy and Bomber sought to file a second summary judgment motion based
on the Sixth Circuit's more recent decision in *Phillips*, which emphasizes this need
for verifying medical evidence to support an Eighth Amendment deliberate
indifference claim given that "[e]ven for garden-variety negligence claims, the
overwhelming weight of authority supports the view that ordinarily expert
evidence is essential to support an action for malpractice against a physician or
surgeon." 14 F.4th at 535 (quotation marks and citation omitted). However,
*Phillips* did not announce this requirement. Instead, the *Phillips* court cited earlier
Sixth Circuit authority, such as *Santiago*, to support it. *Id*. *Santiago* relied on even
earlier Sixth Circuit decisions, including *Napier v. Madison County*, 238 F.3d 739,
742 (6th Cir. 2001). Thus, while Mr. Kensu argues that *Phillips* establishes a new
rule that should not be applied retroactively to his case, there is no merit to this
argument.

never specifically found that Mr. Kensu's shoulder issue was serious or that *any* defendant was deliberately indifferent to that condition.

Contrary to Mr. Kensu's argument (*see* ECF No. 241 at Pg ID 8968-69), it is not prejudicial to require him to produce expert medical evidence to support his claim this late in the litigation. Sixth Circuit precedent required such proof even before Mr. Kensu initiated this action. *See supra*. While Mr. Kensu now requests an opportunity to seek and present such evidence, he offers no indication that he can obtain such proof. (*Id*. at Pg ID 8970-71.) Moreover, the lack of medical evidence is not the only reason Drs. Bomber and Lacy are entitled to summary judgment.

The limited evidence in the case record Mr. Kensu cites does not reflect a *serious* condition. One document on which Mr. Kensu relies predates Judge Roberts' finding of no deliberate indifference. (*See* ECF No. 184-1 at Pg ID 8368 (6/26/09 exam note).) Another document is merely a response to Mr. Kensu's kite inquiring when he would see an orthopedic surgeon. (*See* ECF No. 152-3 at Pg ID 6399.) The response acknowledged that PA McKissick requested an orthopedic consult but the request was deferred. (*Id.*) The fact that PA McKissick referred Mr. Kensu for a *consult* is not evidence that shoulder surgery was needed or, in fact, that any treatment was needed. Notably, another one of the documents

11

reflects that despite subjective complaints of pain, Mr. Kensu "continue[d] to lift weights on a regular basis."  (*Id.* at Pg ID 6453.)

Mr. Kensu has not shown that a competent doctor would have prescribed more than Naprosyn and a hot water bottle and, therefore, that such treatment was so cursory as to constitute no treatment at all.[4]  *See, e.g., Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 778-79 (6th Cir. 2012) (affirming summary judgment to medical providers where the plaintiff "provided no 'verifying medical evidence' that would prove the pain he suffered by [a delay in treatment] had, in and of itself, any effect on his prognosis"); *Sarah v. Thompson*, 109 F. App'x 770, 771-72 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)) (finding that the district court properly granted summary judgment to the defendant because the plaintiff failed to provide evidence to show that the medical need at issue is "sufficiently serious" as "[n]ot every ache and pain or medically recognized condition involving some discomfort can support an Eighth

---

[4] Clearly if a plaintiff has not demonstrated a "sufficiently serious" medical need, the court need not reach the issue of whether the treatment provided was so cursory as to not constitute treatment at all.  *See Phillips*, 14 F.4th at 534 (quoting *Estelle*, 429 U.S. at 106) (emphasis added) (explaining that "[t]o prove this objectively serious harm in the health context, prisoners must *first* establish that they have 'serious medical needs'"); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quotation marks and citations omitted) ("The objective component requires the existence of a 'sufficiently serious' medical need. . . . the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm").

Amendment claim").  While Mr. Kensu argues that the Naprosyn and hot water bottle were eventually discontinued, Drs. Lacy and Bomber explain why such action was taken.  Mr. Kensu offers no evidence to show that it was grossly incompetent to do so.

Once the movant demonstrates that there is no genuine issue of material fact, it is the non-movant's burden to come forward with evidence showing a genuine issue for trial.  *See supra.*  Mr. Kensu has failed to produce such evidence.

## IV.   Conclusion

In summary, the Court finds that Mr. Kensu presents insufficient evidence to create a genuine issue of material fact with respect to whether he suffered a sufficiently serious medical need requiring more treatment than he received.

Accordingly,

**IT IS ORDERED** that Defendants Robert Lacy, D.O. and Jeffrey Bomber D.O.'s Motion for Summary Judgment (ECF No. 238) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Robert Lacy, D.O. and Jeffrey Bomber D.O. are terminated as parties to this action.  Counsel's motion for withdrawal as to these defendants (ECF No. 244) is therefore **DENIED AS MOOT**.

s/ Linda V. Parker           <br>
LINDA  V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 29, 2023